## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RITA D. BACA GRIEGO,

   Plaintiff,

v.               CIV 20-1187 KBM

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

   Defendant.


## <u>MEMORANDUM OPINION AND ORDER</u>

  THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 17*), filed on May 24, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4*; *7*; *8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is well-taken in part and will be granted.

## I. Procedural History

  Ms. Rita D. Baca Griego ("Plaintiff") protectively filed an application with the Social Security Administration for Disability Insurance Benefits ("DIB") under Title II of

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

the Social Security Act on May 15, 2018. Administrative Record[2] ("AR") at AR 168-71.

Plaintiff alleged her disability began on May 3, 2018, due to low vision, neck pain, back pain, and spine pain. AR at 190. Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 63-76) and on reconsideration (AR at 78-93). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of her application. AR at 109-10. Both Plaintiff and a vocational expert ("VE") testified during the *de novo* hearing. *See* AR at 31-61. Plaintiff was represented by attorney Michelle Baca. AR at 15.

ALJ Michael Mannes issued an unfavorable decision on March 31, 2020. AR at 15-26. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 9-11), which the Council denied on September 29, 2020 (AR at 1-6). Consequently, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

---

[2] Documents 14-1 through 14-8 comprise the sealed Administrative Record. *See Docs. 14-1–14-8.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity ("RFC"), she is unable to perform her past relevant work ("PRW"). 20 C.F.R § 404.1520(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(a)(4)(v).

Here, at Step One of the process,[3] ALJ Mannes found that Plaintiff "has not engaged in substantial gainful activity since May 3, 2018," her alleged onset date. AR at 17 (citing 20 C.F.R. §§ 404.1571-1576). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: osteoarthrosis and allied disorders." AR at 17

---

[3] ALJ Mannes first found that Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2023." AR at 17.

(citing 20 C.F.R. § 404.1520(c)). ALJ Mannes also noted that Plaintiff "has the non-severe impairments of osteoporosis, either fibromyalgia or possible psoriatic arthritis with enthesitis and elevated inflammatory markers and possible flares of psoriasis under her breasts, vitamin D deficiency, and obesity." AR at 17 (citing AR at 428, 656) (internal citations omitted).

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). At Step Four, the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,] . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [the ALJ's] decision." AR at 21. After considering and discussing the evidence of record, including the medical opinions, the ALJ determined that Plaintiff:

> has the [RFC] to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, frequently balancing, occasionally stooping, kneeling, crouching or crawling, occasionally reaching overhead with the right upper extremity, frequently reaching in front and laterally bilaterally, time off task can be accommodated by normal work breaks[.]

AR at 19. Given this RFC and the testimony of the VE, the ALJ determined that Plaintiff is capable of performing her PRW as a warehouse manager. AR at 25. At Step Five, the ALJ made the "alternative finding[]" that "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform." AR at 25.

Specifically, the ALJ determined that Plaintiff was capable of performing the jobs of Office helper (DOT #239.567-010), Mailroom clerk (DOT #209.687-026), and Information clerk (DOT #237.367-018). AR at 26. Ultimately, the ALJ found that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 3, 2018, through the date of [the ALJ's] decision." AR at 26 (citing 20 C.F.R. § 404.1520(f)).

## III.   Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial

evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the [C]ourt would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

## IV.    Discussion

Plaintiff asserts that three basic issues require remand: (1) the ALJ erred in failing to develop the record regarding her mental functioning; (2) the ALJ erred in failing to account for her subjective allegations of pain and other symptoms in the RFC; and (3) the ALJ erred in improperly evaluating the persuasiveness of the opinions of John Draper, Ph.D. *Doc. 17* at 5-21. The Court concludes that remand is warranted because the ALJ did not provide legally proper reasons for discounting the opinions of Dr. Draper. Accordingly, the case will be remanded for further evaluation.

### A.    How the Commissioner considers medical opinions and prior administrative findings.

The parties agree that because Plaintiff filed her claim after March 27, 2017, the ALJ properly evaluated the medical opinions and prior administrative findings under the revised regulations found in 20 C.F.R. § 404.1520c. *See Docs. 17* at 14; *21* at 9. Claims filed prior to that date were evaluated under the previous regulation—20 C.F.R. § 404.1527. The revised regulation differs from the prior rule in several respects.

First, the current regulation expands on the definition of an acceptable medical source and includes licensed physicians, licensed psychologists, and licensed advanced practice nurses. *See* 20 C.F.R. § 404.1502. Second, under the prior rule, medical opinions were weighted differently depending on the medical source's

relationship to the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(2) (according "more weight" to the opinions of an examining source than a non-examining source and "controlling weight" to a treating source's well-supported opinions that are "not inconsistent with the other substantial evidence" of record). The current rule places no special weight on opinions offered by a treating source or otherwise. *See* 20 C.F.R. § 404.1520c(a) (providing that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"[4]). "Instead, medical opinions and [prior administrative medical] findings are evaluated for their persuasiveness according to a uniform set of considerations." *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (citing 20 C.F.R. § 416.920c(c)).

The evaluation of these considerations comprises the third relevant difference between the two regulations. While the considerations "are similar under the prior and current rules . . . , the prioritization of the factors and requirements for articulating how an adjudicator consider[s] each factor differ." *Silva v. Saul*, No. CV 19-913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020) (comparing*, e.g.*, 20 C.F.R. § 404.1520c(c), *with* 20 C.F.R. § 404.1527(c)). The five factors an adjudicator considers include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c)(1)-(5). Previously, an adjudicator gave

---

[4] A medical opinion is "a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s) and whether [s/he has] one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2)). A prior administrative medical finding is a finding "about a medical issue made by [the Social Security Administration's] Federal and State agency medical and psychological consultants at a prior level of review . . . based on their review of the evidence in [the] case record . . . ." *Id.* § 404.1513(a)(5)).

special consideration to a source's relationship to a client. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Silva*, 2020 WL 4220862, at *4. The current regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the persuasiveness of medical opinions and prior administrative findings . . . ." 20 C.F.R. § 404.1520c(a). In determining the degree of persuasiveness of opinions and findings, an ALJ must "explain how [he] considered the supportability and consistency factors . . . but [is] not required to[] explain how [he] considered the [remaining] factors . . . ." 20 C.F.R. § 404.1520c(b)(2).

As before, ALJs must "consider all relevant evidence in the case record in reaching their disability determination." *Silva*, 2020 WL 4220862, at *4 (citing 20 C.F.R. §§ 404.1520b, 416.920b). "Although an ALJ is not required to discuss every piece of evidence, '[t]he record must demonstrate that the ALJ considered all of the evidence[.]'" *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "The ALJ must discuss not only the evidence supporting [his] decision but also 'the uncontroverted evidence [he] chooses not to rely upon, as well as significantly probative evidence [he] rejects.'" *Id.* (quoting *Clifton*, 79 F.3d at 1010).

**B.    The ALJ erred in analyzing Dr. Draper's opinions.**

John Draper, Ph.D conducted a psychological consultative examination of Plaintiff on November 26, 2018. AR at 351. During his mental status examination, he found "no evidence of psychomotor agitation or retardation[,]" no delusions, and no suicidal or homicidal ideation. AR at 352. He described Plaintiff's speech as "normal" and found that she "evidenced no difficulty following conversation." AR at 352-53. He

described her behavior as "cooperative" and observed that she was "oriented times three." AR at 352. At the same time, however, he indicated that Plaintiff's mood was "anxious, down" and that she was "not able to remember past events." AR at 352. He noted Plaintiff's limited fund of knowledge, explaining that she was unable to recall any current events or to identify the President or Governor. AR at 353. As for her insight and judgment, Dr. Draper explained that Plaintiff "appears to possess insight into her condition[] but is not able to get appropriate help for illness." AR at 353.

In his functional assessment, Dr. Draper opined that Plaintiff's ability to reason and engage in social interaction was "fair"; that her understanding was "poor to fair"; and that her sustained concentration and persistence and her social judgment were "impaired." AR at 354. In contrast, he opined that her "ability to understand, remember and carry out instructions" was "not impaired." AR at 354. Dr. Draper found, however, that Plaintiff was "not able to interact appropriately with supervisors, co-workers, or the public because of problems understanding, remembering, and concentrating." AR at 354.

The ALJ considered Dr. Draper's opinions, reciting most of his findings. *See* AR at 23 (citing AR at 351-53). He determined that Dr. Draper's opinions were not persuasive, offering the following rationale:

> [Plaintiff] has no history of counseling or inpatient treatment. Examination findings showed [Plaintiff] was alert and oriented x3, with normal mood, affect, judgment, and thought content . . . . [Plaintiff] was referred to behavioral health the preceding year but never went to be seen . . . . [She] maintained a driver's license [and] testified and denied any mental health limitations affecting her ability to work.

AR at 23 (citing AR at 352, 354, 423, 564, 657). In other words, the ALJ found that Dr. Draper's opinions were inconsistent with the record evidence. Under the new regulations found in 20 C.F.R. § 404.1520c, the Court must consider whether the ALJ adequately explained any inconsistency between the record and Dr. Draper's opinion.

Plaintiff raises multiple challenges to the ALJ's evaluation of Dr. Draper's report, insisting that "the ALJ failed to articulate legally acceptable reasons" for his effective rejection of Dr. Draper's opinions. *Doc. 22* at 7. Plaintiff emphasizes that her claims turn on whether the ALJ committed a *legal* error rather than a factual one. *Doc. 22* at 1. Thus, the Court focuses its inquiry on whether the ALJ offered a legally adequate rationale for his rejection of Dr. Draper's opinions, not whether the ALJ's findings were supported by substantial evidence. Having thoroughly reviewed Dr. Draper's report and the administrative record as a whole, the Court concludes that Plaintiff's arguments to this effect are generally well-taken and that remand is indeed warranted.

First, Plaintiff maintains that her failure to obtain treatment for a mental impairment was not a legally adequate reason to reject Dr. Draper's opinion. She relies upon the Tenth Circuit's rationale in *Grotendorst v. Astrue*, 370 F. App'x 879 (10th Cir. 2010), where the court reasoned that the lack of mental health treatment "does not necessarily mean that the impairment does not exist or impose functional limitations." *Doc. 17* at 16 (quoting *Grotendorst*, 370 F. App'x at 883). Like the Tenth Circuit in *Grotendorst*, Plaintiff emphasizes that requiring mental health treatment as a prerequisite to a disability determination "would clearly undermine the use of consultative examinations." *Id*. (quoting *Grotendorst*, 370 F. App'x at 883). While the court's rationale in *Grotendorst* is compelling, it is noteworthy that it was offered at Step

Two of the sequential analysis, in the context of analyzing the severity of a mental impairment, rather than in the context of evaluating medical opinions. *Grotendorst*, 370 F. App'x at 883.

But Plaintiff also observes that another judge in this District, the Honorable Kevin R. Sweazea, has expanded upon the rationale in *Grotendorst*, making explicit distinctions between mental health treatment and treatment for physical ailments and observing that "[w]hile a person might be expected to seek treatment for a severe medical condition, mental illness may well go undiscovered or undiagnosed." *Doc. 17* at 17 (quoting *Baca v. Berryhill*, Civ. No. 16-1128 KRS, 2017 WL 6543816, at *3 (D.N.M. Dec. 21, 2017). In *Baca*, Judge Sweazea explained that "'where a person simply fails to recognize she suffers from a mental illness' [it] mean[s] 'the failure to seek treatment should not be understood as indicating the absence of impairment.'" *Baca*, 2017 WL 6543816, at *3 (quotation omitted). Drawing upon the Tenth Circuit's rationale in *Grotendorst*, Judge Sweazea concluded that the ALJ failed to adequately consider the examining physician's opinion when she discounted his opinions regarding the claimant's non-physical limitations on the basis that the claimant had not sought treatment for her "emotional difficulties." *Id.*

The Commissioner counters, emphasizing that Plaintiff not only failed to obtain mental health treatment but failed to obtain such treatment *after receiving a referral* for such treatment. *Doc. 21* at 9. The Commissioner insists that a "reasonable mind could conclude" that such a failure was "inconsistent with the significant limitations endorsed by Dr. Draper." *Id.* at 10. While the Court cannot say that it was legally improper for the

ALJ to consider Plaintiff's failure to obtain mental health treatment despite referral, this does not end the inquiry.

Plaintiff points the Court to Social Security Ruling 16-3p, which provides:

> if [an] individual fails to follow a prescribed treatment that might improve symptoms, [adjudicators] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. [Adjudicators] will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.

SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 26, 2017). Plaintiff observes that the ALJ's decision is devoid of any consideration of the possible reasons for her failure to obtain mental health treatment despite referral. *Doc. 17* at 19. Plaintiff submits that "[w]ithout any further explanation of his consideration of the relevant facts, the ALJ's use of this observation to reject Dr. Draper's opinion is not adequate." *Id*.

For her part, the Commissioner notes that SSR 16-3p "applies to the evaluation of a claimant's symptoms rather than an opinion from a medical source." *Doc. 21* at 10 (citing SSR 16-3p for the proposition that the purpose of the ruling is to "clarify how the ALJ considers a claimant's symptoms"). Technically, the Commissioner's observation is accurate, as SSR 16-3p is aimed at evaluation of a claimant's symptoms rather than evaluation of medical opinions. Still, the ruling offers guidance to adjudicators in their consideration of a claimant's failure to follow recommended treatment, specifically instructing them to take account of the reasons for that failure. *See* SSR 16-3p, 2017 WL 5180304, at *9.

Here, Dr. Draper's own report, the report that the ALJ found unpersuasive in part because Plaintiff failed to seek mental health treatment, provides some insight into why

Plaintiff might have failed to obtain such treatment. Dr. Draper explains that while Plaintiff "appears to possess insight" into her mental impairments, she is "not able to get appropriate help for illness." AR at 353. He elaborates, noting that when Plaintiff was asked what actions she would take if she smelled smoke in a crowded theater, she responded, "I don't know." AR at 353. Essentially, Dr. Draper intimates that Plaintiff lacks the faculties to obtain the necessary help or to take appropriate responsive action, even in urgent situations. AR at 353. This comports with Judge Sweazea's observations in *Baca* that the very nature of mental health impairments means that, unlike physical illness, they sometimes "go undiscovered or undiagnosed." *Baca*, 2017 WL 6543816, at *3. Given that the ALJ did not discuss why Plaintiff may have failed to obtain mental health treatment – a topic Dr. Draper broached in the subject report – the Court finds that that the ALJ's rationale is legally inadequate. Under these unique circumstances, Plaintiff's failure to obtain mental health treatment fails to constitute a legitimate reason to reject Dr. Draper's opinions.

Next, Plaintiff argues that the ALJ's reference to normal mental status examination findings in other treatment records was misplaced. *Doc. 17* at 17. To be clear, it is "entirely proper for an ALJ to consider [mental status examination findings] when evaluating the supportability of a medical opinion concerning a claimant's overall mental functioning and limitations." *See Casas v. Saul*, Civ. No. 19-1154 KRS, 2021 WL 107244, at *5 (D.N.M. Jan. 12, 2021) (citations omitted). The findings are not, however, dispositive. *Id*. And, here, Plaintiff insists that closer inspection of the mental status examination findings referenced by the ALJ reveal that they do not support his rejection

of Dr. Draper's opinions, especially where that they were documented strictly during treatment of non-psychological conditions. *Doc. 17* at 17-18.

The first treatment note referenced by the ALJ is from a May 9, 2019 visit at Presbyterian, when Plaintiff sought to establish care with Clifford Stermer, M.D., a rheumatologist. *See* AR at 403, 420, 429. At that visit, Dr. Stermer diagnosed Plaintiff with psoriasis with arthropathy, fatigue, fibromyalgia, elevated CRP,[5] Vitamin D deficiency, and oral thrush. AR at 430. With respect to Plaintiff's mental status, Dr. Stermer observed that Plaintiff was "alert and oriented to person, place, and time" and had a "normal mood and affect" as well as normal "judgment and thought content." AR at 422. The second note referenced by the ALJ appears to be a duplicate record from Plaintiff's May 9, 2019 visit with Dr. Stermer. *See* AR at 564. The third note is from Plaintiff's initial endocrinology consult with Mansi Bharat Mehta, M.D. on September 17, 2019. AR at 656. According to the treatment note, Dr. Mehta saw Plaintiff for "initial evaluation of osteoporosis." AR at 656. Dr. Mehta's only observation related to Plaintiff's mental status was that she was "alert and in no acute distress." AR at 657. The fourth note referenced by the ALJ was a November 14, 2019 record from another rheumatology visit with Dr. Stermer. AR at 662-63. The record indicates that Plaintiff was being seen for neck pain and elevated inflammatory markers, including ESR[6] and

---

[5] C-reactive protein ("CRP") is produced by the liver and rises when there is inflammation in a person's body. *What is a C-Reactive Protein Test?*, WebMD, https://webmd.com/a-to-z-guides/c-reactive-protein-test (last visited Jan. 3, 2021).

[6] Erythrocyte sedimentation rate ("ESR") is a blood test looking for inflammation in the body, by measuring how quickly red blood cells fall to the bottom of a tube. *What is your Sedimentation Rate?*, WebMD, https://www.webmd.com/a-to-z-guides/your-sedimentation-rate (last visited Jan. 3, 2021). Inflammation creates proteins that cause red blood cells to fall more quickly. Thus, a faster ESR indicates inflammation. *Id.*

CRP. AR at 662-63. Dr. Stermer recorded the same mental status findings as he did six months earlier – that is, that Plaintiff was "oriented to person, place, and time," had a "normal mood and affect," and normal "judgment and thought content." AR at 665-66.

Examination of the records cited by the ALJ reveals that the referenced mental status examination findings were made by a rheumatologist and an endocrinologist during the course of treatment for neck and back pain and inflammatory conditions. Unlike Dr. Draper, who is a trained psychologist, these providers were neither specialists in the area of psychology nor were they specifically evaluating Plaintiff's mental health conditions. Indeed, Dr. Draper was the only examining medical provider in the record to provide a psychological evaluation. Notably, 20 C.F.R. § 404.1520c(c)(4) provides that an opinion from a source who "has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than [an opinion from] a medical source who is not a specialist in the relevant area of specialty." § 1520c(c)(4).

In this regard, Plaintiff urges the Court to consider Judge Khalsa's rationale in *Stonestreet v. Saul*, No. 19cv0230 KK, 2020 WL 1049349 (D.N.M. Mar. 4, 2020), insisting that it demonstrates that mental status findings during visits for non-psychological concerns fail to support an ALJ's rejection of a psychological opinion on the basis of inconsistency. *Doc. 17* at 18. In *Stonestreet*, Judge Khalsa reasoned that

> It is unclear how an emergency room doctor's notation that [the claimant] was "[a]lert and oriented to person, place, time, and situation" when he presented with chest pain in March 2015, or an orthopedist's opinion that [the claimant's] memory was "intact" and that he exhibited "no depression, anxiety" upon being seen at a pre-operative visit in March 2016 supports the ALJ's rejection of [medical] opinions based on their purported

inconsistency with the record as a whole.

*Stonestreet*, 2020 WL 1049349, at *10.

Despite Judge Khalsa's rationale in *Stonestreet*, the Commissioner maintains that it was reasonable for the ALJ to rely on the limited mental status examination findings from non-psychological medical visits here, where there was an absence of mental heath treatment records. *Doc. 21* at 11. The Commissioner posits that because Plaintiff was not seen for psychological treatment during the relevant period, the referenced mental status examination findings were the most probative evidence of her mental functioning. *Id*.

The Court cannot fault Judge Khalsa's logic in *Stonestreet*, and it too questions how a handful of normal mental status examination notations made during the course of rheumatological and endocrinological evaluations could altogether undermine Dr. Draper's more specific opinions in the context of a psychological consultative examination. At the same time, though, the Court is cognizant that it must not reweigh the evidence before the ALJ.

Ultimately, the Court finds the ALJ's reference to the routine mental status findings is inadequate for independent reasons. First, three of the four treatment notes the ALJ references also include notations that lend *support* to Dr. Draper's opinions. Specifically, the three rheumatology treatment notes in which Dr. Stermer indicated that Plaintiff showed "normal mood and affect" and normal "judgment and thought content," simultaneously indicated, in his "Review of Systems," that Plaintiff was "[p]ositive for depression," was "nervous/anxious[,] and ha[d] insomnia." AR at 422, 563, 666. Notably, mental status examinations are unique in that they "document a clinician's

16

observations of the patient at a particular point in time . . . ." *McGehee v. Saul*, No. 18-1164 KK, 2019 WL 6219507 at *6 (D.N.M. Nov. 21, 2019). Thus, while Dr. Stermer documented that Plaintiff had symptoms of depression, nervousness, and anxiety, he apparently considered her mood and affect to be "normal" at the precise time of his evaluation.

The Commissioner dismisses these undiscussed findings of depression, nervousness, anxiety, and insomnia, arguing that they merely reflect Plaintiff's own reports, rather than evaluations made by her medical providers. *Doc. 21* at 11. But it is not clear to the Court that the findings documented in Dr. Stermer's review of systems should be so easily dismissed. Even if the findings originated from Plaintiff's subjective reports of symptoms, they resulted in findings documented by Dr. Stermer. Significantly, the ALJ failed to mention the findings or to discuss any apparent contradictions in Dr. Stermer's records. It is well-settled that an ALJ must discuss both evidence supporting his decision but also uncontroverted evidence upon which he choses not to rely. *See Clifton*, 79 F.3d at 1010. The ALJ's failure to discuss these mental-health related findings in Dr. Stermer's review of systems suggests that he has run afoul of the rule against picking and choosing evidence to support his finding. *See Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). Simply, the ALJ has failed to demonstrate that he considered all the evidence, including significantly probative evidence upon which he did not rely.

Moreover, the Court finds that the portion of the treatment notes that the ALJ *did* reference contain mental status findings that are largely consistent with Dr. Draper's

findings. Dr. Draper found Plaintiff "cooperative," and, like Plaintiff's rheumatologist and endocrinologist, "oriented times three." AR at 352. Again, Dr. Mehta, Plaintiff's endocrinologist, found only that Plaintiff was "alert and in no acute distress," which is not inconsistent with Dr. Draper's findings. The ALJ failed to elaborate on his conclusory finding that the referenced mental status examination findings rendered Dr. Draper's opinions unpersuasive. In the Court's view, the ALJ's citation to the mental status examination findings of Plaintiff's rheumatologist and endocrinologist alone, absent further explanation, does not qualify as a legally adequate reason for rejecting Dr. Draper's opinions. *See McGehee*, 2019 WL 6219507, at *6 ("To the extent that there may be legitimate reasons for discounting [psychiatric] opinions because they are inconsistent with his [mental status examinations], the ALJ failed to articulate with sufficient specificity those reasons.").

Next, the ALJ observed that Plaintiff "maintained a driver's license" and suggested that this fact, too, supported his rejection of Dr. Draper's opinion. AR at 23. However, the ALJ failed to elaborate as to how the possession of a driver's license – despite Plaintiff's testimony that she did not drive[7] – was contrary to Dr. Draper's findings or conclusions. The Court cannot say that Plaintiff's possession of a driver's license, on its face, is inconsistent with Dr. Draper's opinions. *See Casas*, 2021 WL 107244, at *5 (D.N.M. 2021) (rejecting the ALJ's weighting where she failure to enunciate clear reasoning as to how the record was at odds with the consultative examiner's opinions). Further, as Plaintiff points out, maintaining a driver's license is not

---

[7] Plaintiff testified that she had a standard driver's license but did not drive very often. AR at 37. In his Third-Party Function Report, Plaintiff's husband indicated that Plaintiff does not drive and is driven around by family members. AR at 214.

included in the abilities necessary to do work. *Doc. 17* at 20 (citing Program Operations Manual System ("POMS") DI 25020.010(B)(2)(a)).

The Commissioner does not argue that possession of a driver's license was a legitimate reason for rejecting Dr. Draper's opinions. *See Doc. 21* at 10-11. Instead, she emphasizes that it was "only one reason" offered by the ALJ and "does not detract from the ALJ's other, valid reasons for finding Dr. Draper's opinion not persuasive." *Id*. The Court concludes that without some meaningful explanation by the ALJ as to how Plaintiff's possession of a driver's license is inconsistent with Dr. Draper's opinions, it does not constitute a legally adequate reason for rejecting those opinions.

Finally, the ALJ indicated that Plaintiff "testified and denied any mental health limitations affecting her ability to work," which he suggests contributed to his finding that Dr. Draper's opinion was unpersuasive. AR at 23. Having carefully reviewed Plaintiff's testimony at the administrative hearing, however, the Court finds that Plaintiff did not testify as the ALJ represents. To be precise, the ALJ asked Plaintiff whether she "ha[d] any mental health issues" that she was "being treated for[.]" AR at 45. Plaintiff responded, "No." AR at 45. Apart from denying ongoing mental health treatment, though, Plaintiff did not testify regarding her mental health impairments or how they affected her ability to work. AR at 33-61. Significantly, she did not testify that she did not have mental health impairments. *See* AR at 33-61.

Plaintiff suggests that the ALJ, in his evaluation of Dr. Draper's opinions, "mischaracterize[d] or downplay[ed] evidence to support h[is] findings." *Doc. 17* at 20 (citing *Bryant v. Comm'r*, *SSA*, 753 F. App'x 637, 641 (10th Cir. 2018)). The Commissioner, in contrast, asserts that "[t]he ALJ reasonably could conclude from

[Plaintiff's] testimony that [she] did not have any mental health limitations." *Doc. 21* at 10. The Court agrees with Plaintiff on this issue. In the words of the Tenth Circuit, "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." *Grotendorst*, 370 F. App'x at 883. The Court finds that the ALJ failed to accurately represent Plaintiff's hearing testimony and, as such, this reason, too, fails to qualify as a legally adequate reason for rejection of Dr. Draper's opinions.

In sum, having independently surveyed each of the reasons offered by the ALJ for his rejection of Dr. Draper's opinions, the Court finds that the ALJ has not adequately explained how Dr. Draper's opinions were inconsistent with the record evidence. Moreover, the ALJ failed to sufficiently address evidence in the referenced treatment notes which tends to support Dr. Draper's opinions. As such, the ALJ committed legal error in his evaluation of Dr. Draper's opinions. The ALJ's error was harmful, as the incorporation of Dr. Draper's findings would have led to a more restrictive RFC. Accordingly, remand is required so that the ALJ may properly evaluate Dr. Draper's opinion pursuant to the controlling standards.

### C. Remaining claims of error.

Plaintiff advances additional arguments in support of her Motion to Remand. However, because the Court concludes that remand is required as set forth above, it will not address these other claims of error. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing,

with Supporting Memorandum (*Doc. 17*) is **GRANTED**.

_____

UNITED STATES MAGISTRATE JUDGE
Presiding by Consent